**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nora RODRIGUEZ–DeMAYA,
Defendant-Appellant.**

**No. 81–1161.**

United States Court of Appeals,
Fifth Circuit.

May 7, 1982.

Rehearing Denied June 9, 1982.

Bruder & Cooper, Melvyn Carson Bruder, Dallas, Tex., for defendant-appellant.

Michael P. Heiskell, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Nora Rodriguez-DeMaya challenges her conviction for transporting illegal aliens, contending that her plea of guilty was not in accordance with F.R.Crim.P. 11(c)(3) and that her subsequent motion to withdraw the guilty plea should have been granted. The crux of the argument is that due to her limited understanding of both English and Spanish, Rodriguez-DeMaya did not comprehend what rights she was waiving by pleading guilty, in particular the right to confrontation. Further, Rodriguez-DeMaya contends that the District Judge, although aware of a lack of understanding, accepted the guilty plea in violation of the requirements of Rule 11 and therefore the subsequent denial of the request to withdraw the plea was an abuse of discretion by the District Court. Based on the transcript of both the arraignment and the hearing to withdraw the guilty plea, we find that the plea, knowingly and voluntarily made, was properly accepted and that the District Court did not abuse its discretion in refusing to permit withdrawal of the plea.

## I. Facts

Appellant Rodriguez-DeMaya was charged on February 25, 1981 in a three-count indictment with transporting illegal aliens. Rodriguez-DeMaya is a Mexican national who has lived in the United States for about 27 years. Possessing little knowledge of English, Rodriguez-DeMaya's understanding of Spanish is also, according to her counsel, limited to "the extent of her limited education." Her knowledge of the United States court system is not so limited—she had twice previously pleaded guilty to similar charges of transporting aliens. But unlike the prior experiences, this time, from her arrest until her arraignment, Rodriguez-DeMaya maintained to her court-appointed attorney, Manuel Almaguer, that she was not guilty of the charges. She contended that she had given a ride to individuals who she knew resided in Dallas, where she also lived.

Just prior to her arraignment on March 5, 1981, Rodriguez-DeMaya met with attorney Almaguer a second time and again indicated that she wished to enter a plea of not guilty. Almaguer, speaking to Rodriguez-DeMaya in Spanish, read her an affidavit executed by a government witness, one of the aliens, that contradicted her explanation of the facts and informed her that the government had three such affidavits. Her counsel, in the best of tradition and in the interest of his client, had previously been in touch with the United States attorney who had advised Almaguer of the existence of the sworn statements of the three aliens directly implicating the defendant of the charges. Almaguer had been furnished a copy of one of these statements and had engaged in discussion looking toward an acceptable plea bargain. After Almaguer explained to Rodriguez-DeMaya the contents of the affidavit and the government's agreement to dismiss two of the three counts of the indictment if she pleaded guilty, she voluntarily decided to plead guilty.

On arraignment, an interpreter, who provided simultaneous translation, was present, although Rodriguez-DeMaya apparently responded on occasion directly to the trial judge. The government prosecutor read the indictment, explained the penalty range, and asked the defendant if she had any questions. She indicated that she understood both the nature of the charge and the range of penalties. At that point the District Judge informed the defendant of her rights and questioned her as to understanding of those rights. The judge then ascertained that the plea was voluntary, entered because the defendant was guilty. Finally, the judge developed a factual basis for the acceptance of the plea. The judge undertook to inform Rodriguez-DeMaya and her codefendant of those rights waived by entry of a plea of guilty:

The Court: Now I will tell both of you, you have a right to plead not guilty. If you plead not guilty, you have a right to summon witnesses in your own behalf; you have a right to confront the witnesses of the prosecution and cross-examine them. You do not need to testify but if you do testify and testify falsely you can be prosecuted for perjury.

Does the lady understand? I don't know whether she's hearing.

Defendant: Not very much.

The Court: Is she understanding anything?

Defendant: A little bit.

The Court: If you plead guilty you waive your right to a speedy trial with a jury, you waive the other rights which you have when you plead not guilty. If you plead guilty I can question you about the crime and if you give false answers you can be prosecuted for perjury. Do you understand?

Defendant: Yes. Yes.

Subsequently, the District Court stated:

Mrs. Nora Rodriguez-DeMaya understanding that you have a right to plead not guilty, understanding that if you plead not guilty you have certain rights, understanding that if you plead guilty you waive those right, understanding the charge and understanding the maximum penalty do you wish to plead guilty or not guilty?

Defendant: Copable. [Culpable]

The Court: Copable? [Culpable]

Defendant: Guilty.

At times the District Judge spoke in Spanish directly to Rodriguez-DeMaya. The defendant's attorney, Almaguer, was also questioned as to whether his client understood the charges and the rights she was waiving. The plea was then accepted and sentencing was set for March 27.

Subsequently, Rodriguez-DeMaya filed a motion to withdraw her plea of guilty, alleging that she had misunderstood the effect of the government's affidavits and did not realize that she had the right to confront adverse witnesses. She also alleged that she believed that her court-appointed attorney would not or could not defend her.[1]

A hearing on the motion to withdraw was held on March 24, 1981, again with an interpreter translating simultaneously. At the hearing, Rodriguez-DeMaya testified that she had pleaded guilty because of her court-appointed attorney and because of the plea bargain. Testimony was also presented by the appellant's retained counsel who was then representing her, her court-appointed attorney, Almaguer, her probation officer, and by the assistant United States attorney. At the end of the hearing, the judge denied the motion to withdraw the plea, finding that at the time of the plea she had questioned the appellant very carefully. Three days later Rodriguez-DeMaya was given the maximum sentence of five years with a recommendation of deportation after completion of the sentence.

---

1. In her affidavit supporting the motion to withdraw her guilty plea, prepared by her retained lawyer, Mr. Juarez, Rodriguez-DeMaya stated:

I told Mr. Almaguer [court-appointed counsel] that I was not guilty of the charges in the indictment, and I explained all of the details of the incident to him. He told me that the aliens named in the indictment had given sworn statements to the Government; that he had seen those sworn statements; that the sworn statements proved that I was guilty of what I was charged with in the indictment; and told me that I had no choice but to plead guilty. I told him that the statements were not true and that I was not guilty. Mr. Almaguer told me to plead guilty anyway because the Government had the statements that proved I was guilty. He told me that when I went before Judge Hughes I should plead guilty and agree with the statements made by the aliens. When I went before Judge Hughes I plead guilty and said what Mr. Almaguer advised me to say and agreed with the statements made by the aliens. I did these things because I did not believe Mr. Almaguer thought I was telling him the truth when I told him I was not guilty, and I did not believe he would defend me if I plead not guilty, and because I thought from what Mr. Almaguer told me about the aliens' sworn statements that the statements were enough to convict me regardless of what I had to say about the case.

This appeal raises two issues. First, did the plea of guilty comply with the requirements of F.R.Crim.P. 11(c)(3)?[2] And second, did the District Court abuse its discretion in denying the subsequent motion to withdraw the guilty plea?

The basis for the attack under Rule 11 is not that the District Court failed to admonish the appellant as to any specific area required by the Rule. Rather, Rodriguez-DeMaya asserts that based on the overriding language barrier there was an overall lack of understanding on her part because she believed that she could not contest the affidavits of the government and was not aware of her right to defend herself.[3] Since she entered her plea based upon a mistake, she argues that under F.R.Crim.P. 32(d) she should have been permitted to withdraw the plea.

## II. *Accepting Guilty Pleas*

Rule 11 enumerates those warnings that must be given to a defendant before a plea of guilty may be accepted by the trial court. The defendant must understand the nature of the plea and its consequences and such plea must be voluntary. The three core requirements of Rule 11 are: (1) absence of coercion; (2) understanding of the accusation; and (3) knowledge of the direct consequences of the plea. *United States v. Dayton*, 604 F.2d 931, 939 (5th Cir. 1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). The failure of the District Court to address any one or more of these three considerations generally requires automatic reversal under *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Dayton, supra.* In this case, Rodriguez-DeMaya

contends that she was not made aware of those rights under Rule 11(c)(3), namely, the right to plead not guilty and the right to confront and cross-examine witnesses.

To determine if the District Court complied with the requirements of Rule 11, we look not only at the transcript of the arraignment but also at the transcript of the subsequent hearing to withdraw the plea since at that hearing, the District Court had to determine if the plea of guilty, previously entered, had been knowing and voluntary. Thus the arraignment and the subsequent hearing together reflect what the knowledge and understanding of Rodriguez-DeMaya were.

The appellant contends that the acceptance of the guilty plea was defective because she did not comprehend what was happening. In particular, Rodriguez-DeMaya relies on the judge's question whether she was understanding and her response that she was understanding "not very much" and "a little bit". From this, the appellant contends that since she did not realize the rights that she was waiving, the guilty plea was not knowingly made.

This Court has made clear what is required of a District Court under Rule 11.

What is necessary is that the trial court, given the nature of the charges and the character and capacities of the defendant, personally participate in the colloquy mandated by Rule 11 and satisfy [itself] fully that, within those limits, the defendant understands what he is admitting and what the consequences of that admission may be, as well as that what he is admit-

---

**2.** Rule 11(c)(3) provides:

> **(c) Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
>
> \* \* \* \* \* \*
>
> (3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against

him, and the right not to be compelled to incriminate himself;

**3.** At oral argument before this Court, but nowhere even faintly raised in motions or briefs, counsel for Rodriguez-DeMaya challenged the competency of the interpreter present for both the arraignment and the hearing to withdraw the plea. The *sole* support for such an attack is the translation of "cuatro" as "three," *see* note 6 *infra*, obviously a slip of the tongue immediately rectified by the interpreter. We thus find this argument concerning the proficiency of the interpreter without merit.

ting constitutes the crime charged, and that his admission is voluntarily made. *Dayton*, 604 F.2d at 943. We think it is clear that the District Court, aware of the language barrier in this case, could ascertain that the defendant was cognizant of the consequences of her guilty plea.

From the transcript of the arraignment, it is clear that the District Court determined that Rodriguez-DeMaya appreciated the nature of the charge against her. Not only did the prosecutor read the indictment to her, explain the penalty range and ask if she understood the charge, but the District Judge also went over the charges and the penalty with the defendant. The District Judge took an active role in the questioning, frequently asking the defendant if she understood what was being asked. The District Court, when explaining those rights waived, asked not only if the defendant was understanding but whether she was *hearing*. After Rodriguez-DeMaya indicated that she was understanding "a little bit" the District Court *further* explained that a plea of guilty resulted in a waiver of rights. Subsequently, the judge asked the defendant's attorney if his client understood her right to plead not guilty and the consequences of a guilty plea. The District Court then ascertained that the plea was made voluntarily, asking the defendant in several ways whether the plea was made of her own free will.[4] At that time, Rodriguez-DeMaya indicated that she was pleading guilty because she was guilty.[5]

At the subsequent hearing on the motion to withdraw the guilty plea, Rodriguez-DeMaya testified that she had told her attorney she was not guilty. He had then shown her a piece of paper in which the aliens accused her. She testified that her attorney told her that she should plead guilty "because if I didn't they were going to accuse me for the three charges instead of just one."[6] Along with the existence of the plea bargain, the appellant also stated that she had pleaded guilty because "I knew that he [court-appointed attorney]

---

**4.** The Court: Did anybody use force to make you plead guilty?
Defendant: No.
The Court: Do you plead guilty willingly, of your own free will?
Defendant: Yes, of my will.
The Court: Did anybody use violence to make you plead guilty?
Defendant: No.

**5.** The Court: Is there any plea bargain in this case, Mr. Heiskell?
Mr. Heiskell: Yes, ma'am. Your Honor, in both cases, against both defendants, the Government agrees to dismiss Counts 2 and 3 at the sentencing stage of this case.
The Court: Now the District Attorney says that at the time of sentencing the Government will move to dismiss Counts 2 and 3. Comprende usted?
Defendant: Si. Yes.
The Court: Are you pleading guilty because the Government is going to move to dismiss Counts 2 and 3 or are you pleading guilty because you know yourself to be guilty?
Defendant: I'm guilty.
The Court: What did she say?
Defendant: I'm guilty.
The Court: That's the reason you are pleading guilty?
Defendant: I'm guilty.

**6.** The following exchange occurred between Rodriguez-DeMaya and her retained counsel at the hearing to withdraw the plea:

A. He [court-appointed attorney] told me that I should plead guilty because if I didn't they [the government] were going to accuse me for the three charges instead of just one.
Mr. Juarez: Cuatro is four, isn't it?
Interpreter: Four.
Q. (by Mr. Juarez): And then what did you say, if anything?
A. I told him fine, that I was going to plead guilty.
Q. And then what, if anything, happened after that?
A. No.
Q. What happened after you talked to him there? Did you go in front of the Judge?
A. Si.

    \*    \*    \*    \*    \*    \*

Q. Would you explain to Judge Hughes why you plead guilty?
A. Because I knew that he didn't believe me, that I was innocent, and I knew that he wasn't going to help me in this case.
Q. When you say, "he didn't believe that I was innocent", are you referring to Mr. Almaguer? You said, "he didn't believe I was innocent"?
A. That he wasn't going to help me.
Q. And that is the reason you plead guilty?
A. Si.

didn't believe me, that I was innocent, and I knew that he wasn't going to help me in this case." On cross-examination, Rodriguez-DeMaya admitted that she realized what she was charged with but that she did not understand the affidavit of the witness shown to her by her attorney. She again indicated that her decision to plead not guilty was based on the plea bargain.

Government Counsel:

> At the time, the first time he [court-appointed attorney] came in and talked with you, you told him, I believe your testimony is, that you said you were not guilty, and after he read the statement [affidavit of alien witness] to you that you didn't understand that fully, didn't you tell him that you were in fact guilty of it?

Defendant: I told him no.

Government Counsel:

> And what did he tell you in order to convince you, as you say, to change your mind?

Defendant: That they were going to take away three and leave me with one.

The Court: What's that?

Defendant: They were going to take away three charges or counts and leave me with one.

While a guilty plea must be voluntary, the inducement to plead guilty based on a plea bargain does not render the plea involuntary. *Brady v. United States*, 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747, 758 (1970); *Grantling v. Balkcom*, 632 F.2d 1261, 1264 (5th Cir. 1980); *Clayton v. Estelle*, 541 F.2d 486, 488 (5th Cir. 1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 230 (1977); *Roberts v. United States*, 472 F.2d 1195, 1196 (5th Cir. 1973). "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 171 (1970). In this case, Rodriguez-DeMaya specifically admitted that she was guilty and the District Court established a factual basis for her plea of guilty.

Not only did Rodriguez-DeMaya in the hearing for the motion to withdraw the guilty plea indicate that her motivation was the plea bargain, she also stated that she had understood what the District Court said about accepting a plea only if the appellant were guilty. The testimony of her court-appointed lawyer also supports the finding that appellant recognized the consequences of her plea. He testified that after he read in Spanish to Rodriguez-DeMaya the affidavit of one of the aliens, she stated "ni porque", or "why", in effect a rhetorical question of why plead not guilty.[7] After appellant indicated voluntarily that she wanted to plead guilty, he discussed her right to jury trial and the rights that would be waived by entering a plea of guilty.

From the total circumstances of the arraignment and the subsequent hearing on

---

7. The following exchange occurred at the hearing to withdraw the plea between the court-appointed attorney and the government counsel:

> Q. After you read this particular exhibit [the alien's affidavit] to her, what did she relate to you?
>
> A. In the way of the plea, in relation to explaining, in relating to explaining the affidavit, of course, I explained to her the plea bargain as well and after all that she said she—in other words, why.
>
> Q. I'm sorry?
>
> A. Why plead not guilty. She wanted to plead guilty.
>
> Q. She changed her mind then?
>
> A. She changed her mind to plead guilty.
>
> On cross-examination of the same witness, the following exchange occurred:

> Q. Okay. So you read her the affidavit and she responds with, "Well, I'll plead guilty," or did she say—what did she say after you read the affidavit?
>
> A. I feel like her exact words were "ni porque" or, in other words, why, what's the reason of pleading the way she had intended to. And I—
>
> Q. Kind of a rhetorical question to you, what's the reason of pleading not guilty in the face of this?
>
> A. Right, that's the way I took it.
>
> Q. And then did she indicate voluntarily to you that she wanted to plead guilty?
>
> A. Yes, in fact at that point is when I discussed the voluntariness of the plea, the right to have a jury trial and the witnesses, and so forth.

the motion to withdraw the plea, it is clear that Rodriguez-DeMaya was informed of her rights, not only by the court but by her court-appointed counsel, and that the plea was voluntarily entered, motivated largely by the existence of the plea bargain to dismiss two counts if she pleaded guilty. The testimony also indicates that the District Court was well aware of the language problem, even with an interpreter present, carefully monitoring the questioning to see if the appellant was comprehending what was being asked. The judge repeatedly inquired of Rodriguez-DeMaya if she understood the questions propounded. We would also point out that her court-appointed attorney, Mr. Almaguer, as well as her subsequent retained attorney, Mr. Juarez, both spoke Spanish. Mr. Almaguer was present at the arraignment and at the subsequent hearing to withdraw the plea, although he represented the appellant only at the arraignment. Mr. Juarez was present at the hearing only. We also find significant the fact, developed at the hearing to withdraw the plea, that this was not a maiden voyage for Rodriguez-DeMaya. She had been before District Courts twice previously on similar charges and had pleaded guilty in both cases. In both of those cases, she stated that the lawyers were not court-appointed. From these facts, along with testimony to the effect that the plea was made on the advice of counsel and because of a plea bargain, we find that the District Court could conclude after the arraignment and the hearing on the motion to withdraw the plea that Rodriguez-DeMaya did understand the consequences of her plea.

### III. *Withdrawal of Guilty Pleas*

■ Although we hold that the guilty plea was accepted in compliance with Rule 11, we must consider whether the District Court should have granted the subsequent motion to withdraw the plea under F.R. Crim.P. 32(d).[8] As indicated above, Rodriguez-DeMaya attempted to withdraw her plea, claiming that she had misunderstood

the effect of the affidavits and that she feared that her court-appointed attorney would not defend her if she pleaded not guilty. The right to withdraw a guilty plea is within the sound discretion of the District Court and will be reversed only for abuse of discretion. *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. 1981). The test for whether a plea should be withdrawn is "if for any reason the granting of the privilege [to substitute a plea of not guilty] seems fair and just." *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927); *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir. 1979). Rule 32(d) is to be construed and applied liberally. *Rasmussen, supra; Meaton v. United States*, 328 F.2d 379 (5th Cir. 1964), *cert. denied*, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965). In *Pressley, supra*, we listed several factors to be considered in ruling on a motion to withdraw a plea of guilty: (i) whether close assistance of counsel was available; (ii) whether the original plea was knowing and voluntary; and (iii) whether judicial resources would be conserved.

■ Although Rodriguez-DeMaya, in an affidavit, claimed that she pleaded guilty because of (1) the advice of her court-appointed attorney and (2) her belief that the statements of the aliens were enough to convict her, this affidavit does not mention the incentive of the plea bargain. The impact of the plea bargain was brought out in the hearing on the motion to withdraw the plea. No argument was presented at the hearing on the motion that the aliens' affidavits would fail in convincing a judge or jury of the appellant's guilt. Nor was the judge required to accept the argument that Rodriguez-DeMaya believed that her court-appointed attorney would not defend her if she pleaded not guilty. At the hearing to withdraw the motion, the competency of the court-appointed attorney was not even questioned. In fact, the court-appointed at-

---

8.    **(d) Withdrawal of Plea of Guilty.** A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

torney was an experienced criminal lawyer and known to the trial judge as competent criminal counsel. Almaguer did not deny that the defendant originally wanted to enter a plea of not guilty, but carefully detailed the circumstances in which she voluntarily changed her mind, after being informed of the case against her, the plea bargain, and the consequences of her plea. The District Judge, after the testimony, obviously credited Almaguer's version of events and determined that there was no reason to believe that the attorney had compelled the defendant to plead guilty or that he had in any way indicated that he would not have defended Rodriguez-DeMaya vigorously if she had continued to desire to plead not guilty. It is apparent from the circumstances that after consultation with her court-appointed attorney and with knowledge of the strong case against her, as well as the consequences of her plea, Rodriguez-DeMaya made a voluntary and knowing decision to plead guilty to one count rather than face possible prosecution for three counts.

██ Rodriguez-DeMaya also contends that the absence of a showing of prejudice to the government's case is sufficient to allow her to withdraw her plea. Though it conceded that its case would not be prejudiced by the withdrawal, the government opposed the motion to withdraw. First, the material witnesses would have to be detained for a longer period. Second, the government opposes the withdrawal practice in general.[9] While a finding of prejudice to the government's case is a factor in deciding whether to allow the withdrawal of a plea, the absence of prejudice does not give a defendant an absolute right to withdraw a guilty plea. *Rasmussen, supra*, at 168.

Rodriguez-DeMaya also urges that the District Judge believed that she was doing the appellant a favor by refusing to allow the plea to be withdrawn since the judge indicated that "if I allow her to withdraw her plea of guilty, she can be punished for perjury."[10] The judge, having heard the defendant, her court-appointed lawyer, her new counsel, the assistant United States attorney, and the probation officer, was entitled to express in dramatic terms the conclusion that the defendant could not have been truthful both times, at the arraignment and at the hearing to withdraw the plea, since her statements were contradictory. We thus find this contention without merit.

The hearing on the motion to withdraw the guilty plea reassured the District Judge that the initial plea of guilty had been knowingly and voluntarily made, in full compliance with Rule 11. On that premise and from the evidence adduced at the hearing, the judge was entitled to conclude that withdrawal of that plea of guilty was not required. In denying the motion, the judge did not abuse her discretion.

AFFIRMED.

---

**9.** The government's attorney stated:

[I]t's the Government's position that if this case was allowed—if this defendant was allowed to withdraw her plea then certainly we would be caught in a qualm in many cases whereby we would not know at any time when people would come back. I can foresee some situations where we would have to really wait and see if there are any future motions being filed by a defense attorney.

**10.** The District Judge concluded the hearing with the following remark:

I feel that I questioned this defendant very carefully at the time of her plea of guilty, and she testified to all of the facts in this indictment, she said that they were all true. And if she says now that they were not true, she can be guilty of perjury.

I deny the motion.