UNITED STATES of America, Appellee,

v.

**Michael CARR, Appellant.**

No. 83–1829.

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1984.

Rehearing Denied Sept. 18, 1984.

340

David L. Botsford, Emmett Colvin, Austin, Tex., for appellant.

John De Pue, Atty., Appellate Sect., Dept. of Justice, Washington, D.C., for appellee.

Before GARZA, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

GARZA, Circuit Judge:

## FACTS

Between November 1978, and July 1982, the appellant and two co-defendants conducted various schemes to defraud life insurance companies of commissions on policies and sold false income tax deductions to various business enterprises. The tax fraud conspiracy that formed the basis of appellant's guilty plea was instigated as a means of avoiding federal income tax on

the fraudulently acquired insurance commissions. Appellant then marketed the income tax scheme to third parties as a technique to evade tax liability.[1]

Appellant Carr, Donald McDevitt (an attorney), and Keith Kantor were indicted on July 2, 1982, on five counts of mail fraud in violation of 18 U.S.C. § 1341, and conspiring to defraud the United States by impeding the functions of the IRS in violation of 18 U.S.C. § 371. The three were arraigned on July 16, 1982. Appellant and McDevitt appeared without counsel, they were admonished of their rights, the applicable range of punishment, and the court entered a plea of not guilty for them. At a hearing on July 23, 1982, appellant and McDevitt appeared in court and stated that they were in the process of retaining Roy Minton and Charles Burton as their attorneys. When the court learned of the prospect of joint representation, it warned both attorneys, appellant, and McDevitt about the possibility of a conflict between defense strategies. At the July 30, 1982 hearing the court pursued the possible conflict of interest further. The following exchange occurred:

> THE COURT: I know you are familiar with the fact, of course, both lawyers representing—the same lawyer representing both defendants, there's always that possibility of conflict arising. I have no knowledge of whether there's any such conflict or not, but that's just something you'll have to look for.
>
> MR. MINTON: For the record, if I may, Judge, we talked to both of our clients at length about that.
>
> THE COURT: Yes.
>
> MR. MINTON: Mr. McDevitt is an attorney, and—
>
> THE COURT: Yes, sir.
>
> MR. MINTON: —and we went into that in great detail with them. I cannot discern that there is any conflict; but, if there is, they both waive any conflict that there would be. Is that right gentlemen?
>
> DEFENDANTS CARR, McDEVITT: Yes (in unison).
>
> THE COURT: Of course, that would depend upon what happens in the case.
>
> MR. MINTON: Yes, I understand.
>
> THE COURT: But I wanted to, for the record, have all those things brought up at this time.

Hearing of July 30, 1982, Rec. vol. IV., at 6–7.

Following the July 30 hearing, the court granted three defense motions for continuances. The trial was scheduled to com-

---

**1.** To facilitate the scheme the defendants formed dummy companies for the purpose of appointing corporate officers who supposedly needed substantial life insurance policies. Using a West Indian bank they had acquired, they transmitted false loan commitment letters, promissory notes, and financial statements to insurance carriers to induce them to write the insurance policies and pay the defendants the agency commissions. The defendants also gave the carriers false data concerning the net worth of the individuals to be insured. Moreover, they falsely represented that they were collecting premiums for the policies issued when they were using the commissions they received to pay for the insurance. Finally, in an effort to appear as the victim of harassment from one of the insurance companies they had bilked, appellant and Kantor had "bugging" devices planted in their homes and retained an attorney to report the alleged incident to the Federal Bureau of Investigation.

To facilitate the tax fraud scam the defendants entered fictitious business consultation contracts with various individuals. For example, McDevitt completed a consultation agreement on behalf of a defunct Bahamian corporation he had formed, even though no consultation was ever performed. Appellant, the co-defendants, and the purchasers of their service, agreed that in case of an audit by the Internal Revenue Service they would fabricate false business consultation documents.

To mask the plan, the "consultees" advanced the defendants a consultation fee in the amount of their taxable income. The defendants retained ten percent of that fee, which they kept as their profit, and returned the remaining ninety percent in a loan from their defunct Bahamian corporation or West Indian Bank. Thus, it would appear that the "consultees" had legitimate business tax deductions to offset their taxable incomes. To further legitimize the scam all the defendants met with potential customers, outlined the plan, and got some of the targeted customers to participate.

mence on Monday, October 3, 1983. During the weekend of October 1–2, however, the prosecutor and counsel for the defendants negotiated a guilty plea agreement predicated upon a factual resume to support the anticipated pleas. On the morning the trial was to begin, defense counsel announced that the defendants were prepared to enter pleas of guilty to the tax fraud conspiracy count in exchange for dismissal of the remaining counts. The government's obligation under the agreement, to seek dismissal of the remaining charges, was conditioned upon entry of guilty pleas by all three defendants on the conspiracy count, the so called "all or nothing" requirement. Pursuant to this agreement all three defendants pled guilty to count six of the indictment and were found guilty by the court.

On October 24, 1983, appellant filed a motion for substitution of counsel. On October 25, 1983, he filed a motion to withdraw his plea of guilty on the grounds that he had had a viable defense that he had previously been unaware of, and that he had been pressured into pleading guilty because of the "all or nothing" requirement. Although Burton had admittedly questioned appellant regarding reliance upon such advice, it was alleged that he failed to inform him that advice of counsel could constitute a defense to the charge in question. After granting appellant's motion to substitute counsel, the district court conducted a hearing on his motion to withdraw guilty plea on November 1, 1983.

After reviewing appellant's responses to questions asked during the plea inquiry pursuant to Fed.R.Crim.P. 11 the district court overruled that motion and then called the case for sentencing. The court accepted the plea agreement and sentenced appellant to three years confinement and a $2,500.00 fine. Counts one through five

were then dismissed. Appellant filed a notice of appeal on November 1, 1983.

### ISSUES

Appellant complains that the district court abused its broad discretion in denying his motion to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d).[2] He argues that a withdrawal is justified because his trial attorney failed to inform him that he could use an "advice of counsel" defense to the conspiracy charge against him. Since he was not advised of this defense prior to the entry of the plea, he now claims that the plea was entered improvidently and that he should be permitted to plead anew so as to take advantage of the defense. We find appellant's contention devoid of merit, and therefore affirm the district court.

### The Standard for Withdrawal of a Guilty Plea

■ The standard for determining whether or not a defendant may withdraw his guilty plea prior to sentencing is whether "for any reason the granting of the privilege seems fair and just." *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir.1981) (quoting *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927)); *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir. 1979). Federal courts have uniformly applied this well established standard. *United States v. Barker*, 514 F.2d 208, 219 (D.C.Cir.), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975); *See generally*, Note, *Presentence Withdrawal of Guilty Pleas in the Federal Courts*, 40 N.Y.U.L.Rev. 759 (1965).

■ Courts have considered various elements and factors when applying this standard. The factors that should be considered when applying this standard are: (1) whether or not the defendant has as-

---

**2.** "(d) **Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit

withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255."

serted his innocence;[3] (2) whether or not the government would suffer prejudice if the withdrawal motion were granted;[4] (3) whether or not the defendant has delayed in filing his withdrawal motion;[5] (4) whether or not the withdrawal would substantially inconvenience the court;[6] (5) whether or not close assistance of counsel was available;[7] (6) whether or not the original plea was knowing and voluntary;[8] and (7) whether or not the withdrawal would waste judicial resources;[9] and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading,[10] or the reasons why a defendant delayed in making his withdrawal motion.

■ When courts apply the factors enumerated above they should consider the totality of the circumstances. *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir.1976). Certain guidelines are helpful. For example, the longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion. *Barker* at 222. In addition, "[t]he movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case." *Barker* at 222 (citing *United States v. Vasquez-Velasco*, 471 F.2d 294 (9th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973)). Conversely, a prompt withdrawal may indicate that a plea was unknowingly entered in haste. It should also be remembered that the defendant has the burden of proving the withdrawal is justified. *Everett v. United States*, 336 F.2d 979, 984 n. 17 (D.C.Cir.1964); *see*

*United States v. Webster*, 468 F.2d 769, 771 (9th Cir.1972), *cert. denied*, 410 U.S. 934, 93 S.Ct. 1385, 35 L.Ed.2d 597 (1973); *Callaway v. United States*, 367 F.2d 140, 142 (10th Cir.1966) (per curiam).

■ Finally, the trial court's decision regarding a withdrawal motion must be accorded "broad discretion." *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir.1976), *cert. denied sub nom. Brennan v. United States*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). As we have stated:

> it is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence. Instead, the right to do so is within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion.

*Rasmussen* at 167 (citing *Morrow; United States v. Simmons*, 497 F.2d 177 (5th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 643 (1974)).

*Applying the Standard to Appellant's Motion*

■ Considering the totality of the circumstances and factors involved in this case we find that the trial court did not err in denying appellant's withdrawal motion. First, although the defendant has asserted his innocence, this claim alone is far from being sufficient to overturn denial of a withdrawal motion. Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right. *See Barker* at 221.

---

3. *Rasmussen* at 168; *Barker* at 221.

4. *Rasmussen* at 168; *Barker* at 222.

5. *See Barker* at 221.

6. *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir.1976), *cert. denied sub nom., Brennan v. United States*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); *Barker* at 222; *Everett v. United States*, 336 F.2d 979, 984 (D.C.Cir.1964).

7. *United States v. Rodriguez-DeMaya*, 674 F.2d 1122, 1128 (5th Cir.1982); *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir.1979); *Morrow* at

146; *Rosas v. United States*, 505 F.2d 115 (5th Cir.1974), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2402, 44 L.Ed.2d 670 (1975).

8. *Rodriguez-DeMaya* at 1128; *Pressley* at 711; *Morrow* at 146; *United States v. McCoy*, 477 F.2d 550, 551 (5th Cir.1973).

9. *Rodriguez-DeMaya* at 1128; *Pressley* at 711.

10. *Rasmussen* at 168; *Barker* at 221.

Second, although overturning the district court would appear not to prejudice the government's case, "we do not believe that the absence of a showing of prejudice to the government, by itself, should be sufficient to mandate permission to withdraw a plea when, as here, no credible reason is proffered." *Rasmussen* at 168 n. 6. When we consider the other factors present in this case the fact that the defendant has asserted his innocence and the government will not suffer prejudice does not justify reversing the district court.

As to the third factor, appellant's delay in filing his withdrawal motion, we find that the motion was not promptly filed. The defendant waited twenty-two days before filing his motion for withdrawal of his guilty plea—only three days before sentencing. The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty. *Everett* at 984.

An examination of the record regarding the fourth factor reveals that permitting the defendant to withdraw his plea would have substantially inconvenienced the court. The court had expected the trial to take two to three weeks. Rescheduling such a lengthy trial would have inconvenienced the trial court by disrupting its docket. *See* Hearing on Motion to Withdraw Guilty Plea, Rec. vol. VI, at 74–75. This conclusion is especially true because the court would had to have given the case priority over other pending civil actions because it was a criminal case.

Applying the fifth factor to this case indicates that the district court was correct in refusing to allow any motion for withdrawal. Appellant not only had close assistance of counsel but had close assistance of highly effective counsel. As the district court noted, "there's no better counsel in Texas than Roy Minton and Mr. Burton ...

they are extremely experienced criminal attorneys in defense matters." *Id.* at 73.

Appellant contends that considering the sixth factor his withdrawal should be allowed because his plea was not knowing and voluntary. Appellant argues that because he was unaware of his counsels' conflict of interest and that a possible defense was available to him his guilty plea was not voluntarily, knowingly, and intelligently made, especially since he faced an "all or none" plea agreement. We disagree with appellant's interpretation of the facts. Appellant had very experienced attorneys. He was intelligent, and as a licensed life insurance agent with a college background he was able to understand the elements and nature of the offense to which he plead. In response to the district court's inquiries, he acknowledged that: 1) he "fully and thoroughly underst[oo]d the charges against [him]," Rearraignment Proceedings, Oct. 3, 1983, Defendant's Exhibit No. 3, at 19; 2) he "underst[oo]d the elements of the offense," *id.* at 43; 3) he had "discuss[ed] in detail the charges with [his] attorney," *id.* at 19; and 4) he admitted "doing what he was charged with doing." *Id.* at 45. Finally, the district court's comments are instructive: "I saw the demeanor. I saw the actions of all defendants. There was just no question in the Court's mind but what everyone thoroughly and clearly understood what was being said, what was done in this case as I accepted the plea of guilty." Hearings on Motion to Withdraw Guilty Plea, Rec. vol. VI, at 72, 74. Appellant's arguments that he did not understand the government's factual resume are meritless. We conclude that he entered a knowing and voluntary plea agreement.

As to the seventh factor, the district court was correct in denying the withdrawal motion because to do otherwise would have wasted judicial resources. The district court's assessment of this factor is entitled to substantial deference since it is in the best position to know the effect that the withdrawal had on its resources. Judge Mahon noted that denying the with-

drawal motion would conserve judicial resources because:

> [h]ere is a case of great magnitude. The court had set aside two to three weeks to try the case, and just a few days before I granted a continuance in a backup case to it because this one was going to take two or three weeks to try, and I had been informed by Mr. Eddins and the attorneys—in fact, daily I asked Mr. Eddins if there was any chance, and I believe it was Saturday night, as I recall—it was already dark. I was home—that he called and said, 'I have got some good news It looks like we've got a plea agreement worked out, and we may not have to have that two or three week trial.' And that's the first knowledge this court had of any such situation, and we didn't even get it in time to call off the jurors, as I recall. We had the whole basement jury room full of jurors on that day. Normally, if we think there is going to be a plea agreement, we are not going to trial, all of our jurors call in on Friday after 5:00 o'clock. Well we didn't get word before Friday at 5:00 o'clock that we were going to have a plea, so we had a number of jurors for this panel here to be—from which the jury was to be selected.

> The defendant entered into a plea agreement, and, of course, it goes without saying that still there was a lot of expenditures expended with the jurors and certain witnesses that were already here. Not quite all the witnesses were here at that time.

*Id.* at 74–75. Allowing appellant to withdraw his guilty plea some twenty-two days later, after substantial court resources had been wasted by his initial guilty plea, was well within the district court's discretion. Moreover, denying a withdrawal motion when it would waste judicial resources "protects the rights of other accused persons awaiting trial, whose cases may lose

both their position on the calendar...." *Everett* at 984.

In examining the last factor, why appellant did not proffer defenses now offered, we find that he had no valid excuse. In judging appellant's reasons for delay, we agree with the Ninth Circuit that "the standard for judging the movant's reasons for delay remains low where the [withdrawal] motion comes only a day or so after the plea was entered." *Barker* at 222. Since appellant's motion came twenty-two days after he entered his guilty plea, he must meet a more demanding standard.

■ Appellant argues that he did not proffer the defense [11] of advice of counsel because his attorney did not inform him that such a defense was possible. Appellant contends that he was in an attorney-client relationship with McDevitt at the time the events that lead to the filing of this criminal action unfolded. The evidence overwhelmingly indicates, however, that the reason that his attorney did not advise him of such a defense is that such a defense was beyond the realm of a legally cognizable defense under the facts of this case. Charles Burton, one of appellant's able attorneys, testified that his examination of the facts never revealed that such a defense was viable. Before appellant entered his plea, Burton questioned him about whether or not he had relied on McDevitt's advice as his attorney. Hearing on Motion to Withdraw Guilty Plea, Rec. vol. VI, at 36. Burton represented appellant for fifteen months, and testified that:

> There were hours of conversations between the three defendants and others concerning ideas and plans and speculations about things which might be done, but in none of those conversations did it appear to me or occur to me nor did Mr. Carr advance the theory or suggest to me that he was seeking advice from Mr. McDevitt as an attorney....

---

**11.** Strictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent. *See Shushan v. United States,* 117 F.2d 110, 118 (5th Cir.1941); *Hawkins v. State,* 656 S.W.2d 70, 72–73 (Tex.Cr.App.1983) (en banc).

Well, my understanding of the defense is that, if an individual who has planned action in mind goes to an attorney and makes full disclosure of his intent and the attorney informs him that it's proper and legal, that that may be a defense to the conduct that he carries out. I simply never saw those facts *or anything close to those facts* in this case.... Certainly there was exchange of information, discussion of legal theories, tax theories throughout this period of time, but I did not view Mr. Carr and Mr. McDevitt as having attorney/client relationship, insofar as the events for which they were indicted and tried.

*Id.* at 35, and 41 (emphasis added).

 The record reveals that counsel was correct in believing that the advice of counsel defense was meritless. "Advice of counsel, when given on full disclosure of all the facts and followed in good faith, may be a matter to be considered by the jury in determining the appellants' guilt." *United States v. Thaggard*, 477 F.2d 626, 632 (5th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973). For such a defense to be permitted, however, there must be at least some evidence that the attorney advised the defendant as his counsel. *See, e.g., Shushan*, 117 F.2d at 118. When the lawyer is a partner in a venture, takes a share of the profits, or is "not a lawyer who had no interest save to give sound advice for a reasonable fee" the advice of counsel defense is unavailable. *Id.* The advice of counsel defense is also not permissible when defendants

retain ... counsel to insure the success of their mendacious scheme, not to secure legal advice, [or when t]he attorneys in question merely implemented in the most expeditious manner the plan concocted by their clients, ... [or when the] facilitation of [a] scheme was the essence of the attorney-client relationship in controversy.

**12.** Indeed, appellant's affidavit on its face may be inadequate as it merely states that "[a]t all times during the indictment period, I was advised by Don McDevitt and other attorneys that the transactions in which I was involved and

*United States v. Shewfelt*, 455 F.2d 836, 839 (9th Cir.), *cert. denied*, 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). Finally, "where defendants know that their conduct is violative of state law, their wrongful purpose, *ab initio*, established beyond a reasonable doubt, leaves them in no position to [utilize the advice of counsel defense] to claim that they had no intention of violating a federal statute which, in fact, denounced the unlawful conduct as also constituting a federal crime." *United States v. Thaggard*, 477 F.2d at 632.

 The record in this case reveals that McDevitt was integrally involved in the sham operation. He shared in the profits of the scheme. Re-arraignment Proceedings, Oct. 3, 1983, Defendant's Exhibit No. 3, at 39. In addition, he actively promoted the operation by conducting meetings. *Id.* at 41–42. Finally, there is little, if any, evidence that McDevitt was ever asked, or gave, advice in the context of an attorney-client relationship.[12] On these facts, there is not enough evidence to justify an advice of counsel defense. Thus, the court was correct in denying appellant's withdrawal motion, which was based on this ground.

### Effective Assistance of Counsel

Appellant's second point of error is that he was denied his sixth amendment right to effective, conflict-free counsel. Appellant urges that his counsel, Minton and Burton, labored under a conflict of interest because of: (1) their joint representation of appellant and McDevitt, one of the other codefendants; (2) the failure of appellant's counsel to explore and develop the defense of good faith reliance on counsel; and, (3) the all or none plea agreement, which allegedly resulted in counsel advising appellant to plead guilty.

Appellant also argues that the district court failed to follow Rule 44(c) Fed.R. Crim.P. because the court failed to "per-

upon which I acted were legal." This statement fails to indicate that appellant fully and honestly set forth all the facts to McDevitt, sought his advice as an attorney, and honestly relied on such advice.

sonally advise" the appellant of his rights. In addition, appellant contends that the two counsel, which were both members of the same law firm, failed to develop the defense of good faith reliance on counsel because to do so they would have had to have shifted responsibility to McDevitt. Appellant posits that this situation placed the attorneys in an inherent conflict of interest situation. Finally, appellant maintains that Burton's advice to him regarding the all or none plea agreement was a conflict of interest because of the good faith reliance on counsel defense available to appellant. Appellant states that the "all or none" plea agreement was:

> the only apparent way out of the conflict for Minton and Burton.... If Burton and Minton had continued to represent the appellant and McDevitt after the guilty plea, they would have to have stressed the appellant's reliance on McDevitt and the appellant's relative lack of involvement in count six at sentencing. Otherwise, the appellant would not have received effective assistance of counsel. If they had done so, however, McDevitt would have been prejudiced.

Appellant's brief, at 34.

■ In examining the first of appellant's contentions we must apply a well established standard governing conflict of interest claims. This standard provides that "in order to establish the violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–47 (1980). We have held that "[a] conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to a codefendant whom counsel is also representing." *Foxworth v. Wainwright,* 516 F.2d 1072, 1076 (5th Cir.1975). *Accord, e.g., United States v. Benavidez,* 664 F.2d 1255, 1260 (5th Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982). In assessing whether or not

such conditions are present in a particular case the attorney representing both defendants "is in the best position professionally and ethically to determine when a conflict of interest exists...." *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 346.

■ There can be little doubt that in this case the two partners representing appellant and McDevitt did not have any actual conflict of interest. As noted in our recitation of the facts, the trial court repeatedly and effectively pursued the possibility of a conflict of interest between the lawyers. Both attorneys stated that they were certain that there was no conflict of interest. Hearing of July 30, 1982, Rec. vol. IV, at 7. In addition, at the November 1, 1983, hearing to set aside the guilty plea appellant's counsel also again represented to the court that there was no perceived conflict of interest. Hearing on Motion to Withdraw Guilty Plea, Rec. vol. VI, at 53–54. Finally, as noted previously, Burton made it clear at the Hearing on the Motion to Withdraw Guilty Plea that there was simply no probative evidence regarding a possible advice of counsel defense.

■ During the July 30, 1982 hearing, the court asked counsel whether or not he had: discussed the matter of joint representation with appellant and McDevitt, obtained their assurances that there were no discernible conflicts, and extracted waivers of any conflict from appellant and McDevitt. Rec. vol. IV, at 6–7. The court, however, failed to "personally advise" each defendant of his rights as required by the Rule. *See* Fed.R.Crim.P. 44(c). Therefore, the literal requirements of the rule were not complied with fully. *See United States v. Benavidez,* 664 F.2d at 1258. Nevertheless, as we held in *Benavidez,* even if the trial court fails to comply fully with the mandates of Rule 44(c), "a defendant must still demonstrate an 'actual conflict of interest' before [a court] will reverse his conviction." *Id.* at 1259. As we have noted above there was no basis for an advice of counsel defense. Thus, appellant had no grounds for asserting a defense that would

have diverged significantly from McDevitt's interests. Accordingly, there was no actual conflict of interest and the district court's failure to comply with the literal requirements of the rule is inconsequential.

Appellant's third ground of error is that he was denied his sixth amendment right to effective assistance of counsel because Minton and Burton allegedly failed to investigate a potential and plausible defense of good faith reliance on counsel.

▮ In analyzing the failure to investigate issue we must follow the Supreme Court's recent pronouncements in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court held that:

> counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments....

> [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

— U.S. at —, 104 S.Ct. at 2066, 80 L.Ed.2d at 695–96. On the facts of this case, counsel's failure to investigate the advice of counsel defense was reasonable because an attorney is under no duty to investigate frivolous, implausible, or meritless defenses. *See Bradbury v. Wainwright,* 658 F.2d 1083, 1087–88 (5th Cir. 1981) (unit B), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982).

Finally, even where a defendant shows that counsel erred in failing to investigate a plausible defense, such a mistake does not justify reversal of his conviction if the error had no effect on the judgment. *Strickland v. Washington,* — U.S. at —, 104 S.Ct. at 2067, 80 L.Ed.2d at 696; *see Dufresne v. Moran,* 729 F.2d 18, 25 (1st Cir.1984). Since the advice of counsel defense was absolutely meritless, obviously appellant has not come close to showing that the failure to investigate that defense affected his judgment in any way. Therefore, appellant was not denied effective assistance because his attorney did not investigate the advice of counsel defense.

### Rule 11(f)

▮ Appellant's fourth ground of error is that the district court failed to comply with Rule 11(f) of the Federal Rules of Criminal Procedure. Appellant argues that the court's 11(f) inquiry failed to determine whether or not the appellant understood the nature of the mental element required by 18 U.S.C. § 371 so as to conclude that the requisite factual basis existed for the acceptance of the plea. During the 11(f) proceeding the court stated:

> So the first element is that there has got to be this agreement or scheme that is referred to as a conspiracy, that it was willfully formed and it was existing during this period of time. That's the first element.

> The second element is that you willfully became a part of that agreement; you became a member of the group.

Defendant's Exhibit No. 3, at 43.

We disagree with appellant's interpretation of the facts. As we have already noted, the evidence in the record indicates that the appellant understood fully the charge to which he was pleading, including the element of mental intent. Any question as to appellant's knowledge of the scienter requirement was resolved by the factual resume which stated that the offense involved a conspiracy *knowingly* to defraud the government "by manufacturing false and fraudulent tax deductions." Anyone with appellant's level of education and degree of sophistication in the insurance industry and business world would know that such allegations entailed specific fraudulent intent and were antithetical to a defense of good faith.

**350**

*Entry of the Plea*

Appellant's fifth ground of error is that he did not enter his plea voluntarily, knowingly, and intelligently. Appellant argues that his previous grounds of error including the conflict of interest, his lack of knowledge regarding a plausible defense available to him and the knowledge of the mental state required by 18 U.S.C. § 371 when considered together indicate that he made an involuntary plea. As discussed earlier, in connection with the factors to be considered in deciding whether or not to allow a defendant to withdraw a guilty plea, we find that the appellant's plea was knowingly, intelligently, and voluntarily made. Considering the totality of the circumstances and the discretion due the district court we find the denial of the withdrawal motion was proper.

Having considered all of appellant's arguments and finding them meritless, the entire opinion of the district court is affirmed.

AFFIRMED.