**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12863

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LATREL JACKSON,
a.k.a. Kobe,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:22-cr-00067-SPC-KCD-2

_____

Before LUCK, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Latrel Jackson appeals the district court's denial of his motion to withdraw his guilty plea, arguing that he did not fully

understand the plea agreement because he believed he would qualify for a sentence reduction for substantially assisting the government's investigation under United States Sentencing Guidelines section 5K1.1.  After careful consideration, we affirm the district court's denial.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jackson was indicted for interstate murder-for-hire and conspiracy to commit interstate murder-for-hire.  Less than a week before his jury trial, Jackson agreed to plead guilty to both counts under a written plea agreement.

### *Plea Agreement*

His plea agreement had the following provisions.  Jackson "agree[d] to cooperate fully" with the government's "investigation and prosecution of other persons," and the government "agree[d] to consider whether such cooperation qualifie[d] as 'substantial assistance' . . . warranting the filing of a motion for a reduction of sentence."  Jackson signed off that he "underst[ood] that the determination of whether 'substantial assistance ha[d] been provided or what type of motion related thereto w[ould] be filed, if any, rest[ed]" with the government.  Jackson "agree[d] that [he] c[ould] and w[ould] not challenge that determination."

The government promised to "make known to the [district c]ourt . . . the nature and extent of [Jackson's] cooperation" but Jackson "underst[ood] that the government c[ould] make no representation that the [district c]ourt w[ould] impose a lesser sentence

solely on account of, or in consideration of, such cooperation." Finally, Jackson "underst[ood] and acknowledge[d] that, although the parties [were] permitted to make recommendations and present arguments to the [district c]ourt, the sentence w[ould] be determined solely by the [district c]ourt" and "any discussions between" Jackson and the government "regarding any recommendations by the government [were] not binding on the [district c]ourt." If "any recommendations [were] rejected," Jackson "w[ould] not be permitted to withdraw [his] plea pursuant to th[e] plea agreement."

### Change-of-plea Hearing

Jackson then had a change-of-plea hearing where the district court reviewed the plea agreement with Jackson under oath. Jackson testified that he could "read, write, speak, and understand the English language." He swore that he read and understood "each and every page" of the plea agreement, that he was not under the influence of alcohol, drugs, or any medication that could affect his ability to think clearly, and that he was "clearheaded" from "any type of mental or emotional disease[,] defect[,] or illness."

The district court confirmed that Jackson's attorney discussed with him the sentencing guidelines and the section 3553(a) factors and that Jackson understood that the guidelines were advisory to the district court—that the district court "ha[d] the authority to impose a sentence that's either more or less severe than the sentencing guidelines that [we]re advised." The district court warned Jackson that "the sentence [it] impose[d] may be different

than any estimated sentence that [his attorney] may have given" him, which was "a guess on his part" on where Jackson "would fall in the guidelines." As the district court explained, it "[wa]s not bound by what" his attorney told him and "would look at the guidelines in an advisory manner and then sentence" him. Therefore, the district court cautioned, Jackson was "not going to be able to withdraw [his] plea of guilty if at some point [his] attorney's predictions were wrong as to where [he] would fall on the guidelines." When asked if he understood, Jackson replied, "[y]es."

Finally, the district court reviewed the part of Jackson's plea agreement discussing the potential for substantial assistance. It "ma[d]e sure that [Jackson] read that [part] carefully," and then explained that the government "reserve[d] it's discretion . . . to decide whether or not [it was] going to move the [district c]ourt, or ask the [district c]ourt, for a reduction based upon substantial assistance." Jackson said that he understood what that meant.

At the end of the colloquy, the district court asked again if Jackson understood "the rights that [he was] giving up[,] . . . the charges against [him], the potential penalties, and the potential consequences, and the sentencing guidelines" in entering his plea. Jackson replied that he did and pleaded guilty.

### Motion to Withdraw Guilty Plea

Two weeks before his scheduled sentencing—after the government "informed [Jackson] that his cooperation did not arise to the level of substantial assistance"—Jackson moved to withdraw his guilty plea. In his motion, Jackson argued he "was under the

belief that the government would file a [section 5K1.1 sentence reduction] motion if he cooperated with the government." That "mis impression [sic]," according to Jackson, "led to him entering the change of plea."

The district court denied Jackson's motion, finding that Jackson reviewed his plea agreement with the close assistance of counsel, he knowingly and voluntarily pleaded guilty based on his statements made during the plea colloquy, and allowing him to withdraw his plea "would waste judicial resources and force the government to re-create its case." Jackson appeals the district court's denial of his motion to withdraw his guilty plea.

## STANDARD OF REVIEW

We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006).

## DISCUSSION

"There is no absolute right to withdraw a guilty plea." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Instead, a defendant seeking to withdraw his guilty plea after its acceptance but before sentencing must show that there is a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). Jackson argues that he met this burden because he believed he would qualify for a

6                    Opinion of the Court                 24-12863

sentence reduction for substantially assisting the government's investigation.

In determining whether a defendant has met his burden to show a "fair and just reason" to withdraw his guilty plea, the district court must consider the totality of the circumstances surrounding the plea, including whether: (1) close assistance of counsel was available; (2) the plea was knowing and voluntary; (3) judicial resources would be conserved; and (4) the government would be prejudiced if the defendant were allowed to withdraw his plea. *Brehm*, 442 F.3d at 1298 (quoting *United States v. Buckles*, 843 F.2d 469, 471-72 (11th Cir. 1988)).  We agree with the district court that the *Buckles* factors weigh in favor of denying Jackson's motion to withdraw his guilty plea.

*Jackson's plea was knowing and voluntary.*

Because Jackson concedes that "close assistance of counsel was available" to him, we start with the second factor—whether Jackson's plea was knowing and voluntary.  It was.

A plea is knowing and voluntary when the defendant understands the nature of the charges against him, understands the consequences of pleading guilty, and enters the plea free from coercion.  *See United States v. Rodriguez*, 751 F.3d 1244, 1253–54 (11th Cir. 2014).  Federal Rule of Criminal Procedure "11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea."  *Brehm*, 442 F.3d at 1298.  "We will not find that the district court abused its discretion if it conducted an extensive plea

colloquy that conforms with Rule 11 . . . before accepting a guilty plea." *Id.* That's what happened here.

During the plea colloquy, Jackson testified that he read the indictment, his attorney "explain[ed] everything to him about th[e] indictment," and he understood the charges against him and the possible penalties. The plea agreement was clear that the government had complete discretion in deciding whether to seek a sentence reduction for substantial assistance. The district court read the substantial assistance provision in the plea agreement and emphasized to Jackson that the government "reserve[d] its discretion . . . to decide whether or not [it was] going to move . . . for a reduction based upon substantial assistance." Jackson confirmed that he understood the plea agreement (including the substantial assistance provision) and freely agreed to it. After the district court's extensive colloquy, Jackson still chose to plead guilty. Based on Jackson's sworn statements—which are presumed true— and the district court's extensive plea colloquy, it was not an abuse of discretion for the district court to deny Jackson's motion to withdraw on the basis that his argument was "entirely inconsistent with the record." *See United States v. Gonzalez–Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Brehm*, 442 F.3d at 1298.

Jackson resists this conclusion, arguing that he misunderstood the plea agreement because his attorney improperly explained the implications of section 5K1.1 and because his dyslexia made it difficult for him to read. But neither of these arguments help Jackson because the district court verbally explained to him

during the plea colloquy that the government had discretion to move for a sentence reduction based on substantial assistance. And Jackson swore that he understood what that meant.

*Judicial resources would be conserved by denying Jackson's motion.*

Normally, "if the defendant does not satisfy the first two factors, we need not thoroughly analyze whether judicial resources would be conserved or whether the government would be prejudiced." *Gonzalez-Mercado*, 808 F.2d at 801. But even if we considered these other factors, they too favored denying Jackson's motion to withdraw his guilty plea.

Jackson pleaded guilty a week before his trial was set to start. By then, the government had reached out to more than forty witnesses across five states. If Jackson was allowed to withdraw his plea, the government would have to restart that work anew. And "[a]ny trial in this matter w[ould] be a significant undertaking, . . . likely tak[ing] two to three weeks to present to the jury." *See Buckles*, 843 F.2d at 474 (finding that "the district court was justified in considering the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter after the acceptance of the guilty plea."). For that reason, judicial resources would not be conserved in allowing Jackson to withdraw his plea. *See id.* (explaining that a "district [court's] assessment of effect on judicial resources [is] to be accorded substantial deference since [it] 'is in the best position to know the effect the withdrawal had on its resources'" (quoting

24-12863              Opinion of the Court                    9

parenthetically *United States v. Varr*, 740 F.2d 339, 345–46 (5th Cir. 1984)).

*The government would be prejudiced if Jackson were allowed to withdraw his plea.*

Finally, as to prejudice, with the significant delay since Jackson was originally charged, there's a good chance the government would be unable to locate witnesses and that some of the witnesses, even if located, would be less helpful to the government due to memory loss. As the government explained, "convincing many of the lay witnesses in this case to speak with law enforcement and testify . . . was no easy feat," and many witnesses "expressed reluctance to meet with law enforcement and fear[ed] for their safety." Under these circumstances, the government should not "be required to undertake the considerable and unpredictable effort of corralling and placating reluctant witnesses."

## CONCLUSION

The *Buckles* factors weigh in favor of denying Jackson's motion to withdraw his plea. Thus, we affirm the district court's order denying Jackson's motion.

**AFFIRMED.**