United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 31, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-40898

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**LUIS JAVIER RANGEL,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Southern District of Texas
(B-00-CR-317-ALL)**

Before KING, Chief Judge, and BARKSDALE and PICKERING, Circuit

Judges.

PER CURIAM:[*]

Luis Javier Rangel pleaded guilty to possession with intent to

distribute less than 500 grams of cocaine. His sentence was based

not only on the 297.7 grams of cocaine found in his possession when

arrested, but also on an additional quantity he admitted purchasing

prior to that arrest; the latter quantity was considered relevant

conduct, pursuant to Sentencing Guidelines § 1B1.3. Rangel

challenges his sentence, claiming: the district court erroneously

calculated the amount of cocaine involved in the pre-arrest

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

purchases; and those purchases were for personal use and, therefore, are *not* relevant conduct.  **AFFIRMED**.

I.

On 5 July 2000, officers in Harlingen, Texas, stopped Rangel's automobile and searched it with his consent.  The officers found 297.7 grams of cocaine in the automobile and on Rangel.  He was charged with *conspiring* to possess and with possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Pursuant to a plea agreement, Rangel pleaded guilty to possession with intent to distribute and the Government dismissed the *conspiracy* charge.

During an interview for use in preparing the presentence investigation report (PSR), Rangel admitted to the probation officer that he had made two purchases within six months of his arrest that involved amounts of cocaine *similar* to the amount of cocaine for which he was convicted.  The PSR included these pre-arrest purchases as relevant conduct under Guidelines § 1B1.3 for purposes of calculating Rangel's sentence and stated they involved approximately 595.4 grams of cocaine (297.7 grams for each of the two pre-arrest purchases).  The resulting drug quantity was 893.1 grams (297.7 grams for the instant offense, plus 594.4 grams for the two pre-arrest purchases).  Because that quantity was more than 500 grams, but less than two kilograms, of cocaine, Rangel's base offense level was 26.  U.S.S.G. § 2D1.1(c)(7).  The PSR also stated

2

that Rangel admitted: to a daily cocaine habit of approximately 1/8 of an ounce (approximately 3.5 grams); and to buying and selling cocaine in order to support that habit. With a recommended three-level downward adjustment for acceptance of responsibility, the PSR calculated Rangel's total offense level at 23. Coupled with his category II criminal history, his Guidelines sentence range was 51 to 63 months' imprisonment.

In his pre-sentencing response to the PSR, Rangel filed only one objection: he "object[ed]" to the PSR paragraph that detailed his two pre-arrest purchases, but without further explanation. At sentencing, his counsel objected, but without Rangel's testifying, to the PSR's inclusion of the two pre-arrest purchases as relevant conduct; his attorney stated Rangel purchased that cocaine for his personal use. Accordingly, Rangel's attorney urged Rangel should be sentenced based only on the 297.7 grams found at the time of his arrest; this would result in a sentencing range of 27-33 months. (Rangel did *not* object at sentencing to the PSR's stating that each of the two pre-arrest purchases involved approximately 297.7 grams of cocaine.) The district court overruled Rangel's objection and sentenced him to 63 months' imprisonment — the high end of the range recommended by the PSR.

## II.

Although the plea agreement contained a waiver of Rangel's right to appeal, the Government does *not* invoke that waiver;

3

accordingly, we will *not* consider the waiver.  The district court's legal interpretations of the Sentencing Guidelines are reviewed *de novo*; its factual findings, only for clear error.  *E.g., **United States v. Alford***, 142 F.3d 825, 831 (5th Cir. 1998).  A factual finding is not clearly erroneous as long as it is plausible in the light of the record as a whole.  *Id*.  Obviously, the district court's determination of the drug quantity involved in an offense is a factual finding.  *Id*.

A.

Rangel first contests the district court's drug-quantity calculation, challenging the PSR's stating that each of the two pre-arrest purchases involved approximately 297.7 grams of cocaine. Rangel contends:  he admitted to the probation officer only that the two purchases involved amounts of cocaine *similar* to the amount he possessed when arrested, but the exact quantity of those purchases is uncertain.  As discussed *supra*, although at sentencing, Rangel expanded upon his one word written objection to this part of the PSR, he objected *only* to the pre-arrest purchases' being included as relevant conduct.  As noted, his objection was based on his claim that the cocaine was for personal use (discussed *infra*); he did *not* claim the quantity was inaccurate. Accordingly, we review only for plain error.

Under the more than well-established test for reversible plain error, the error must be clear or obvious and affect the

4

defendant's substantial rights. *Id*. at 830. Even if these requirements are satisfied, whether to correct the plain error is within our discretion; ordinarily, we will not do so "unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings". *Id*. (citations omitted).

In determining drug quantities for sentencing purposes, the district court may rely on any relevant evidence that has "sufficient indicia of reliability". ***United States v. Posada-Rios***, 158 F.3d 832, 878 (5th Cir. 1998). The PSR is generally of sufficient reliability. ***Alford***, 142 F.3d at 831-32. When, as here, the defendant contests the facts presented in the PSR, he bears the burden of demonstrating that the "information cannot be relied upon because it is materially untrue, inaccurate or unreliable". ***United States v. Angulo***, 927 F.2d 202, 205 (5th Cir. 1991). If, as here, the defendant presents *no* evidence to refute the facts to which he objects, the facts contained in the PSR may be adopted by the district court without further inquiry, as long as they have an adequate evidentiary basis. ***Alford***, 142 F.3d at 832.

As noted above, Rangel presented *no* evidence at sentencing to refute the PSR's stating that the two pre-arrest purchases each involved approximately 297.7 grams of cocaine, nor did he deny admitting that the purchases involved *similar* amounts of cocaine. The district court was entitled to make a reasonable estimate of

5

the drug quantity involved in those pre-arrest purchases; its estimate was not limited to the amount seized at arrest. *See* U.S.S.G. § 2D1.1, comment. (n.12) ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."); **United States v. Medina**, 161 F.3d 867, 876 (5th Cir. 1998).

Rangel admitted to the probation officer that each of the two pre-arrest purchases involved amounts of cocaine similar to the amount for which he was convicted, and he presented no evidence at sentencing on those pre-arrest amounts. Accordingly, the district court did not clearly err, much less plainly err, in adopting the PSR's position that the two pre-arrest purchases involved a total of approximately 595.4 grams of cocaine.

## B.

Rangel next maintains: even if the contested drug-quantity finding for the pre-arrest purchases was accurate, the district court erred in finding those purchases were relevant conduct because the cocaine was purchased for his personal use. Pursuant to U.S.S.G. § 2D1.1(a)(3), the offense level for a drug trafficking conviction is determined by the quantity of drugs involved in the offense. *E.g., **United States v. Schorovsky***, 202 F.3d 727, 729 (5th Cir. 2000). In making this drug-quantity finding, the district court may consider drug quantities not specified in the count of

conviction *if* they are part of the defendant's relevant conduct. U.S.S.G. § 2D1.1 comment. (n.12).

Relevant conduct includes all of the defendant's acts and omissions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense". U.S.S.G. § 1B1.3(a)(1). Moreover, because an offense under § 2D1.1 is one for which multiple counts may be grouped, *see* U.S.S.G. § 3D1.2(d), relevant conduct includes "all acts and omissions [which otherwise meet the relevant conduct definition that] were part of the same course of conduct or common scheme or plan as the offense of conviction". U.S.S.G. § 1B1.3(a)(2). Rangel does *not* challenge this.

1.

Our court has *not* decided whether drugs obtained for personal use may be considered in determining a Guidelines sentence for a possession-with-intent-to-distribute conviction, but at least six other circuits have held that the sentencing court *cannot* consider personal-use drugs in that instance. *Jansen v. United States,* 369 F.3d 237, 249 (3d Cir. 2004); *United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003); *United States v. Williams*, 247 F.3d 353, 358 (2d Cir. 2001); *United States v. Fraser*, 243 F.3d 473, 475-76 (8th Cir. 2001); *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998); *United States v. Kipp*, 10 F.3d 1463, 1465-66 (9th Cir.

7

1993).  On the other hand, at least five circuits have held that personal-use drugs *can* be considered relevant conduct for sentencing *when the defendant was convicted for participation in a drug conspiracy*.  **United States v. Page**, 232 F.3d 536, 542 (6th Cir. 2000), *cert. denied,* 532 U.S. 1056 (2001); **United States v. Asch**, 207 F.3d 1238, 1243-44 (10th Cir. 2000); **United States v. Fregoso**, 60 F.3d 1314, 1328 (8th Cir. 1995); **United States v. Antonietti**, 86 F.3d 206, 209-210 (11th Cir. 1996)(in conspiracy case, purporting to reject **Kipp**'s reasoning that personal-use drugs *not* relevant conduct for possession, but seeming to ignore the relevant distinction in the case law between conviction for conspiracy and conviction for possession with intent to distribute); **United States v. Innamorati**, 996 F.2d 456, 491 (1st Cir.), *cert. denied*, 510 U.S. 1120 (1993).

Relying on the former line of cases, Rangel claims:  because he was convicted only for possession with intent to distribute, the drugs he possessed for personal use should *not* be counted toward his sentence.  As discussed below, we need *not* reach this issue; the district court rejected Rangel's objection at sentencing in which his counsel asserted that the pre-arrest drug purchases were for Rangel's personal use.

2.

In considering this objection to the PSR, the district court did *not* reject Rangel's claim that personal-use drugs should *not* be

8

considered for the sentencing amount. Instead, the court questioned the probation officer about converting Rangel's purported daily cocaine habit of 1/8 of an ounce into grams (approximately 3.5) in order to determine what portion of the 893.1 grams for which the PSR recommended Rangel be sentenced was arguably for personal use. Rangel's counsel also participated in the discussion. After making these conversions, the district court stated to Rangel's counsel: "I got the impression when you first started, you were saying [Rangel] might have bought some, but it was only for personal use. Well, it seems to me that even if it was a fourth of a pound, four ounces, that is still a lot to be constituting personal use, especially in the six-month period before his arrest". The court then overruled Rangel's objection to the PSR, thereby rejecting the *factual* assertion that the pre-arrest purchases were for personal use. Again, this rejection is a finding of fact, reviewed only for clear error. *E.g.,* **Alford**, 142 F.3d at 831.

Although, as reflected above, the district court's statement about personal use is somewhat confusing as transcribed, it did *not* clearly err in finding that the 595.4 grams of cocaine from the two pre-arrest purchases were *not* for personal use. Along this line, under Guidelines § 2D1.1(a)(3), the next lowest sentencing range is for quantities of less than 500 grams. In order to lower Rangel's sentencing range, the district court would have had to find a

9

significant amount of cocaine (nearly 400 grams) was for Rangel's personal use.

In contrast, Rangel presented *no* evidence at sentencing to support his purported daily 1/8 of an ounce cocaine habit; obviously, his counsel's claims or estimations at sentencing do *not* constitute evidence. *See United States v. Mayberry*, 272 F.3d 945, 949 (7th Cir. 2001). Needless to say, although Rangel did claim this daily 1/8 of an ounce cocaine habit to the probation officer, the district court "need not accept the defendant's self-serving account of his role in [a] drug organization". *United States v. Gadison*, 8 F.3d 186, 197 (5th Cir. 1993). When a defendant claims drug quantities are *not* relevant conduct because they were intended for personal use, the defendant bears the burden of production with respect to his personal use, although the Government bears the ultimate burden of persuasion with respect to the sentencing amount. *Gill*, 348 F.3d at 156; *Asch*, 207 F.3d at 1246. Again, Rangel made only a pre-sentencing self-serving statement to the probation officer for PSR preparation purposes; he submitted *no* evidence that the pre-arrest cocaine purchases were intended only for personal use and *not* for distribution. For example, Rangel never presented evidence that the cocaine for personal use was stored separately or packaged differently from the cocaine for resale.

Rangel was sentenced on the basis of 893.1 grams of cocaine. That finding was *not* clearly erroneous.

### III.

For the foregoing reasons, the sentence is

***AFFIRMED.***