# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2020

Lyle W. Cayce
Clerk

No. 19-30159

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JARVIS HARDY,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CR-26-1

---

Before DENNIS, SOUTHWICK, and HO, *Circuit Judges*.

PER CURIAM:*

Jarvis Hardy appeals from the district court's denial of his motion to withdraw his guilty plea. For the reasons that follow, we AFFIRM.

## I.

Following a months-long Drug Enforcement Agency (DEA) investigation into the drug-trafficking activities of Jarvis Hardy, law

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

enforcement officers secured an arrest warrant for Hardy and a search warrant for his residence. On the morning of January 26, 2016, officers went to Hardy's house to execute the warrants. After knocking and announcing their presence at Hardy's home and receiving no response, the officers used a battering ram to forcibly gain entry. Upon entry, the officers again announced their identity as "police."

As the officers approached his bedroom, Hardy fired several shots, striking DEA Task Force Officer Stephen Arnold[1] in the neck and arm. Officers arrested Hardy at the scene and recovered the following items from his home: crack cocaine; currency in a safe in Hardy's bedroom; drug trafficking paraphernalia; and two firearms, including the weapon used to shoot Officer Arnold. Office Arnold survived the shooting but is completely incapacitated, requiring twenty-four-hour care in an assisted-living facility.

Hardy was charged in a superseding indictment with the following nine counts: conspiracy to distribute controlled substances (count 1), four counts of distribution of cocaine base (counts 2-5), attempted murder of a federal agent (count 6), discharge of a firearm during and in relation to a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count 7), possession with intent to distribute cocaine base (count 8), and possession of a firearm in furtherance of a drug trafficking crime in violation of § 924(c)(1)(A) (count 9). Several charges carried mandatory minimum sentences. Specifically, count 1 carried a ten-year mandatory minimum, count 7 carried a consecutive ten-year mandatory minimum, and count 8 carried five years. Under the law at the time of Hardy's superseding indictment, had he been convicted of the § 924(c)

---

[1] Arnold was a Jefferson Parish Sheriff's Detective who had been deputized as a DEA Task Force Officer.

No. 19-30159

violation under count 7, a second § 924(c) conviction under count 9 would have triggered an additional, consecutive sentence of at least twenty-five years. *Compare* § 924(c)(1)(C)(i) (2006), *with* §924(c)(1)(C)(i) (2018); *see United States v. Chapman*, 851 F.3d 363, 373 (5th Cir. 2017) (citing *Deal v. United States*, 508 U.S. 129, 133 n.1 (1993)). In total, then, Hardy faced a mandatory minimum sentence of forty-five years if convicted on all counts.

Hardy eventually entered into a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement. Under the terms of the agreement, Hardy pleaded guilty to counts 1-5, 7 and 8.[2] The Government in turn dismissed counts 6 and 9. The parties agreed that a total sentence of thirty-five-years was appropriate.

In light of the plea agreement, the district court held a rearraignment hearing on August 6, 2018. At the hearing, the court found Hardy competent to proceed and then engaged in the Federal Rule of Criminal Procedure 11 (Rule 11) colloquy before accepting Hardy's guilty plea. During questioning, Hardy stated that he was satisfied with his counsel and that he was knowingly and voluntarily waiving the right to trial. The court also summarized each count to which Hardy was pleading guilty and reviewed the applicable

---

[2] The plea agreement contains a provision that waives, *inter alia*, Hardy's right to contest his guilty plea. The Government, however, has not invoked it. *United States v. Rangel*, 108 F. App'x 162, 164 (5th Cir. 2004) ("Although the plea agreement contained a waiver of [defendant]'s right to appeal, the Government does *not* invoke that waiver; accordingly, we will *not* consider the waiver."). Moreover, the waiver does not preclude Hardy from contesting whether he knowingly and voluntarily entered into the plea agreement in the first place. *See United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (appeal waiver pursuant to plea agreement does not bar challenge to whether waiver was "knowing and voluntary").

mandatory minimum sentences for these counts.  Hardy indicated that he understood the penalties.

On August 20, 2018, two weeks after he entered his plea, Hardy mailed a letter to the district court wherein he claimed that counsel had coerced him into accepting the plea deal, that he accidentally shot Officer Arnold because the officer did not identify himself as such, and that the officers' entry to his home was not made pursuant to a valid search warrant. He asked "to take [his] plea back."  He also stated, however, that he "only want[ed]to take [his] plea back once" the judge went through his case and saw that the officers "did an illegal search and s[ei]zure."  "If" the district court determined that the officers' entry into his home was illegal, then, Hardy wrote, he would "like to take [his] plea back."

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("FSA" or "Act"), was signed into law.  Section 403 of the Act amended 18 U.S.C. § 924(c).  Under § 403 of the Act, the twenty-five-year mandatory minimum sentence for a second or subsequent § 924(c) violation is now triggered only if the second violation occurs after the defendant's prior § 924(c) conviction becomes final.  First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-22.  The amendment applies to any offense committed before the First Step Act's enactment if a sentence has not yet been imposed.  *Id.* § 403, 132 Stat. at 5222.  Therefore, if convicted of all nine counts in the superseding indictment, Hardy would have faced a total mandatory minimum of twenty-five years after the FSA, rather than the forty-five years under the law at the time of his rearraignment.

On January 11, 2019, the district court received another letter from Hardy, alleging for the first time that he accepted the plea agreement because

of the "vague possibility of [§] 924c stacking."[3] Hardy mentioned the First Step Act's directive to "do away with [§] 924c stacking" and said that his "plea agreement should be renegotiated [be]cause this case can be brought to trial[, and] I could get the same amount or less." He also again complained that he shot Officer Arnold accidentally and that the search was invalid.

Less than a week later, the district court held a status conference to clarify whether Hardy wanted to withdraw his guilty plea. At the hearing, Hardy stated that his attorneys had convinced him that if he were found guilty, he would receive sixty to seventy years in prison. Hardy also stated, "one of the main reasons for me accepting this plea agreement was because of the laws concerning the [§] 924(c) stacking, which ha[ve] now been changed. So this is the main purpose. I've never agreed with the plea agreement . . . ." Hardy then asked to withdraw his plea. The district court appointed another lawyer to represent Hardy for the limited purpose of filing a motion to withdraw his guilty plea.

In February 2019, via his newly appointed counsel, Hardy filed a motion to withdraw his guilty plea. He contended that the prospect of a cumulative mandatory minimum sentence of forty-five years imprisonment under then-governing law motivated his decision to accept the plea deal. Hardy argued that the First Step Act's amendment to § 924(c)'s stacking provision provided a fair and just reason to withdraw his plea. In connection with his discussion of whether his plea was knowing and voluntary, Hardy stated that "it appears certain that neither [he] nor his counsel took note of the impending passage of the First Step Act and its enormous impact on plea and sentencing considerations."

---

[3] The mailing date of Hardy's second letter cannot be discerned from the record.

No. 19-30159

The Government opposed Hardy's motion, arguing, *inter alia*, that the six-month delay between Hardy's August 2018 plea and his January 2019 letter seeking to withdraw his plea based upon the First Step Act weighed against granting the motion to withdraw. The Government also asserted that, at the time of Hardy's August 2018 plea, there was no reason to think that significant criminal justice reform like the First Step Act would be passed later that year.

Several days after the Government filed its opposition, Hardy mailed another letter to the district court, writing, "I am not asking to withdraw my plea because th[ere] was a change in the law. I am asking to withdraw my plea because my attorneys brought und[ue] pressure upon me."

The district court held a hearing on the motion at which both Hardy and his two previous attorneys testified. Hardy stated that he wanted to withdraw his plea because his attorneys coerced him into entering the thirty-five-year plea agreement. Hardy also believed his home was illegally raided, but he stated that was "not specifically the reason why [he] wanted to withdraw [his] plea." Rather, it was the undue pressure from his attorneys.

Hardy's prior attorneys testified that they believed the thirty-five-year plea deal was in Hardy's best interest because, if he went to trial and were convicted, he faced a mandatory minimum sentence of forty-five years and a possible maximum sentence of life in prison. One of his attorneys also stated that the case for Hardy would have been difficult to win because Hardy had admitted most of the facts the Government had to prove to convict him, "other than the shooting being intentional."

After considering the factors specified in *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984), as relevant to deciding whether a defendant may withdraw a guilty plea, the district court denied Hardy's motion. It determined that Hardy had equivocated on withdrawing his plea in his first

No. 19-30159

and second letters following the guilty plea, and that Hardy did not make his desire to withdraw his plea clear until the January 2019 status hearing. The court also concluded that, even if Hardy had not been dilatory in filing his motion, the other *Carr* factors weighed against granting his motion to withdraw his plea. With respect to whether the plea was knowing and voluntary, the district court found that Hardy's allegations of coercion by counsel were not credible. The court further determined that if Hardy was seeking to withdraw his plea because of the First Step Act, that change in the law was "not a sufficient basis" to withdraw a plea that was entered into knowingly and voluntarily.

The district court subsequently accepted the Rule 11(c)(1)(C) plea agreement, and sentenced Hardy to the thirty-five-year term of imprisonment specified therein, as well as five years of supervised release. Hardy timely appealed.

II.

After a plea is accepted but before sentencing, a district court may allow the plea to be withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal." FED R. CRIM. P. 11(d)(2)(B). A district court's denial of a motion to withdraw a plea is reviewed only for abuse of discretion. *Carr*, 740 F.2d at 344. "[A] district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Lord*, 915 F.3d 1009, 1013-14 (5th Cir. 2019) (internal quotation marks and citation omitted).

III.

On appeal, Hardy argues that the district court abused its discretion in denying his motion to withdraw his guilty plea based on the FSA. He contends that his plea was rendered unknowing and involuntary by the post-

plea enactment of the FSA.[4]  A "material reason" for accepting the plea agreement, he avers, was his understanding—later proven incorrect following the enactment of the FSA—that, under count 9 of the superseding indictment, he could receive a consecutive mandatory minimum sentence of twenty-five years, in addition to the mandatory minimum sentences attaching to the other charges.  He also asserts that the statutory change between his plea and sentencing constituted a "fair and just reason" to withdraw his plea.

In evaluating the denial of a motion to withdraw a plea, we consider the totality of circumstances, including the seven *Carr* factors:

> (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was

---

[4] In his briefing, Hardy appears at times to treat the question of whether his plea was knowingly and voluntarily entered into as overlapping with but distinct from the issue of his request to withdraw his plea.  He notes, for instance, that different standards of review apply to the validity of a guilty plea versus the denial of a motion to withdraw a plea, and that some of the factors relevant to assessing a plea's validity "similarly inform" the analysis of whether a defendant may withdraw his plea.  Whether a plea is knowing and voluntary implicates both due process and Rule 11, which enumerates procedures "meant to ensure that a guilty plea is knowing and voluntary." *United States v. Vonn*, 535 U.S. 55, 58 (2002); *see also McCarthy v. United States*, 394 U.S. 459, 65-66 (1969) (same).  But beyond asserting generally that pleas must be knowing and voluntary, Hardy does not press any distinct argument that the district court violated Rule 11 and nowhere mentions due process. *See United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (explaining that a "party must press its claims" or they will be "deemed to have been waived").  In any event, the *Carr* factors relevant to analyzing the denial of a motion to withdraw a plea expressly include consideration of whether the plea was knowing and voluntary, 740 F.2d at 345, and if the plea was involuntary or unknowing, then the district court would have committed reversible error.  We therefore consider Hardy's arguments as to whether his plea was knowing and voluntary as part of our review of the denial of his motion to withdraw.

knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources.

740 F.2d at 343-44 (footnotes omitted).  "[N]o single factor or combination of factors mandates a particular result," *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996), and "[t]he burden of establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant."  *Id.*

*Carr* Factor 1: Innocence

The district court determined that this factor weighed against Hardy because he "never really asserted his innocence in any way."  At his hearing on his motion to withdraw, Hardy claimed, for the first time, that he was innocent of count 1, conspiracy to distribute crack cocaine.  On appeal, however, Hardy does not claim he is innocent of any of the counts to which he pleaded guilty.  Moreover, "[d]uring rearraignment, [Hardy] made . . . affirmative declarations that he was guilty as charged.  Because 'solemn declarations in open court carry a strong presumption of verity,' the district court did not abuse its discretion in placing little weight on [Hardy]'s assertion of innocence."  *See United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) (quoting *United States v. Lampazianie,* 251 F.3d 519, 524 (5th Cir. 2001)).

*Carr* Factors 2, 4, and 7: Prejudice to the Government, Inconvenience to the Court, and Waste of Judicial Resources

The district court determined that the Government would be prejudiced and that the court would be inconvenienced by withdrawal of the plea considering "all the time, effort, and difficulty that the [c]ourt and the parties put into resolving this case," and that a withdrawal "would waste a lot of judicial resources."  On appeal, Hardy concedes that withdrawing his plea would impact the Government, the court, and judicial resources, but he

argues that an estimated five-day trial in his case would not be wasteful considering the interests of fairness and justice.

Hardy fails to show that the district court's assessment of these factors was clearly erroneous. *See Lord*, 915 F.3d at 1013-14; *see also McKnight*, 570 F.3d at 650 (determining that even a two-day trial "does not necessitate a finding that there is no inconvenience to the district court"). In addition, the district court's determination as to the burden on the court "is entitled to substantial deference since it is in the best position to determine the effect that the withdrawal had on its resources." *See Carr*, 740 F.2d at 345-46. Accordingly, the district court did not abuse its discretion in finding that these factors weighed against granting his motion to withdraw his plea.

*Carr* Factor 3: Delay in Filing Motion to Withdraw

Hardy pleaded guilty on August 6, 2018. The district court noted that the actual motion to withdraw the guilty plea was not filed until February 2019, but it stated that, even if Hardy's August 2018 letter clearly indicated an intent to withdraw his plea, this factor did not outweigh all the other factors in the case. Accordingly, the district court evidently weighed this factor in Hardy's favor.

*Carr* Factor 5: Close Assistance of Counsel

Hardy does not argue on appeal that he lacked close assistance of counsel nor does he maintain his prior position that counsel coerced his plea. Hardy has thus forfeited any argument as to this factor. *See United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010). Regardless, the district court did not abuse its discretion in determining he had the close assistance of counsel.

"In weighing this factor, we look to whether counsel was available to the defendant throughout the proceedings, including whether counsel

negotiated the defendant's plea agreement, and whether a defendant was satisfied with his defense counsel." *Lord*, 915 F.3d at 1016 (internal citations and quotation marks omitted). Here, Hardy was represented by counsel throughout the proceedings, including the plea negotiations, and he confirmed at rearraignment that he was satisfied with counsel's representation and that his plea was not the result of threats or force. Hardy's solemn declarations of guilt "in open court carry a strong presumption of verity" and cast doubt on his later assertions of being coerced by counsel into pleading guilty. *See Blackledge*, 431 U.S. at 74. The district court found Hardy's latter testimony that he was coerced by counsel to be incredible, and we discern no clear error in this finding. *See United States v. Urias-Marrufo*, 744 F.3d 361, 368 (5th Cir. 2014) (noting that "[t]he district court, having already been in charge of the case and familiar with [the defendant], the lawyers, and any other relevant actors, was in the best position to evaluate the [defendant's] credibility" regarding her motion to withdraw her guilty plea based upon counsel's alleged failure to advise her of the immigration consequences of her plea). In sum, Hardy has not shown that the district court abused its discretion in determining that he had the benefit of close assistance of counsel.[5] *See Lord*, 915 F.3d at 1016.

---

[5] Hardy concedes that the record is insufficiently developed to consider his claim of ineffective assistance of counsel and preserves this issue for collateral review. *See McKnight*, 570 F.3d at 646-48 (noting that ineffective assistance of counsel and close assistance of counsel are distinct issues and that the proper mechanism for resolving an ineffective assistance of counsel claim is a habeas corpus proceeding); *see also United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014) (declining to consider merits of ineffective assistance of counsel claim when record was not sufficiently developed). We therefore express no opinion as to whether he could succeed on that claim if raised in a collateral proceeding.

*Carr* Factor 6: Knowing and Voluntary Guilty Plea

Because a guilty plea involves the waiver of constitutional rights, it "must be voluntary" and "knowing." *Brady v. United States*, 397 U.S. 742, 748 (1970). To enter a knowing and voluntary guilty plea, a defendant must have full knowledge of what the plea connoted and of its consequences. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The district court concluded that this factor weighed in favor of denying Hardy's motion to withdraw because Hardy repeatedly indicated during his Rule 11 colloquy that he understood the charges and the plea agreement, had conferred with counsel, and was not forced or threatened into pleading guilty.

Hardy argues that the passage of the First Step Act rendered his guilty plea unknowing and involuntary because if he had known Count 9 of the indictment would not carry the possibility of a mandatory consecutive minimum sentence of 25 years, he would have proceeded to trial. We disagree.

The most analogous case in our circuit is *United States v. Trammel*, 710 F. App'x 225 (5th Cir. 2018). There, the defendant pleaded guilty pursuant to a plea agreement to a twenty-year sentence but moved to withdraw his plea before sentencing. *Id.* at 225. He contended "that he thought he would face [substantially lengthier] sentencing as a career offender but that the career offender enhancement turned out to be inapplicable to one of his prior offenses" under a case decided after his plea but before his sentence. *Id.* The district court denied the motion to withdraw the plea, and we found no abuse of discretion under the *Carr* factors, explaining that the defendant "was fully informed and aware of the possibility, however uncertain, that he might be able to challenge his career offender status or that some unforeseeable change in the law might lower his sentencing exposure under" the guidelines "after he pleaded guilty." *Id.* at 226. Here, as in *Trammell*, a potentially

"unforeseeable change in the law" arose that "lower[ed]" Hardy's sentencing exposure. *Id.* Although Hardy's "choice was difficult, it was not involuntary." *Id.*

In concluding that the plea was knowing and voluntary, the *Trammell* court relied on the Supreme Court's decision in *Brady v. United States*, 397 U.S. 742, 757 (1970). *Id.* In *Brady,* a habeas case, a prisoner challenged the validity of his plea to kidnapping under the federal kidnapping statute. *Id.* at 743-45. At the time he pleaded guilty, the offense carried a possible death penalty, but the Supreme Court had subsequently held that capital punishment for a violation of the kidnapping statute was unconstitutional. *Id.* at 743, 746. In light of the intervening Supreme Court decision, the prisoner contended that his plea was not knowing or voluntary. The Court roundly rejected this argument, holding that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate the plea rested on a faulty premise." *Id.* at 757. Though *Brady* was in the habeas context and considered an intervening judicial (as opposed to legislative) decision, Hardy provides no reason to conclude that these distinctions alter *Brady*'s applicability here.

That Hardy's plea was not rendered unknowing or involuntary by a post-plea change in the law is further supported by caselaw from our sister circuits. *See, e.g.*, *United States v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005) ("[A] favorable change in the law does not entitle a defendant to renege on a knowing and voluntary guilty plea."); *United States v. Morgan,* 406 F.3d 135, 137 (2d Cir. 2005) ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."); *United States v. Bradley*, 400 F.3d 459, 463-64 (6th Cir. 2005) ("[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid

plea agreement, after all, requires knowledge of existing rights, not clairvoyance.*")*; *United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005) (per curiam) ("The plea allocution shows Haynes to have been fully informed, competent, free of coercion, and cognizant of his rights at the time of the plea. While ignorance of then-existing rights can invalidate a plea agreement in some cases, ignorance of future rights is unavoidable and not a basis for avoiding a plea agreement.").

Hardy relies on several inapposite cases. First, he cites our decision in *United States v. Barrow*, 557 F. App'x 362, 366 (5th Cir. 2014). In that case, the defendant argued that his guilty plea ought to be vacated because the post-plea enactment of the Fair Sentencing Act of 2010 substantially reduced the mandatory minimum sentence for the offense to which he pleaded. *Id.* at 363-64. Although the defendant had been correctly advised by the district court during his plea colloquy that his offense carried a twenty-year minimum sentence, the Fair Sentencing Act reduced the applicable term to a ten-year minimum. *Id.* At sentencing, the district court applied the reduced mandatory minimum sentence pursuant to the Fair Sentencing Act. *Id.* at 364. We nevertheless held that the district court violated Rule 11's prescription that a defendant be informed of any mandatory minimum penalties before the court accepts a guilty plea. *Id.* at 366 (citing FED. R. CRIM. P. 11(b)(1)(I)).[6] In doing so, we stated that "[i]t is well-settled in this and other circuits that the district court committed Rule 11 error by advising [the defendant] that a higher, pre-F[air] S[entencing] A[ct] minimum sentence would apply, even though that was a correct statement of the law at the time of [defendant]'s plea agreement." *Id.*

---

[6] The court held, however, that the error was harmless because the defendant failed to show that the error likely affected his willingness to plead guilty. *See Barrow*, 557 F. App'x at 366.

No. 19-30159

Second, Hardy cites *United States v. Hughes*, 726 F.3d 656, 662 (5th Cir. 2013), where we likewise held that the district court committed Rule 11 error. There, the defendant was informed by the court at his change-of-plea hearing that he faced a mandatory minimum of ten-years' imprisonment and a maximum possible penalty of life imprisonment, which were correct statements of law at the time. *Id.* However, like *Barrow*, post-plea enactment of the Fair Sentencing Act lowered the defendant's mandatory minimum penalty to five year's imprisonment and maximum penalty to forty years' imprisonment. *Id.* The defendant moved to withdraw his plea, which the district court denied. Following imposition of his sentence, the defendant appealed, alleging, *inter alia*, that the district court failed to comply with Rule 11's requirement that it properly inform the defendant of "any mandatory minimum penalty" and "any maximum possible penalty, including imprisonment." *Id.* at 661 (quoting FED. R. CRIM. P. 11(b)(1)(H), 11(b)(1)(I)). We explained that, "although the district correctly applied the law as it stood in this circuit at the time of the change-of-plea hearing," its "decision [was] rendered erroneous by [the] subsequent change in the law."[7] *Id.* Significantly, we rejected the defendant's separate challenge to the denial of his motion to withdraw his plea. *Id.* at 662-63 ("We see no errors of law or clearly erroneous factual findings in the district court's decision [to deny the motion to withdraw], and we therefore hold that the district court's denial of Hughes's motion was not an abuse of discretion.").

*Barrow* and *Hughes* are plainly distinguishable from the present matter. First, those cases concerned challenges to the district court's failure

---

[7] Applying plain error review though, we held that the defendant was not entitled to vacatur of his plea because he could not show that his substantial rights were affected; that is, he had "not shown a reasonable probability that, but for the Rule 11 error committed, he would not have pleaded guilty." *Hughes*, 726 F.3d at 662.

to follow the specific procedures mandated by Rule 11, whereas the *Carr* factor at issue here involves the broader issue of whether Hardy's plea was knowing and voluntary. Second, in *Barrow* and *Hughes*, the district courts actually violated the Rule 11 procedures governing the plea colloquy, because post-plea changes in the applicable sentencing law rendered the district courts' Rule 11 advisements erroneous. Thus, the defendants in those cases were incorrectly informed by the respective district courts of the penalties they faced for the offenses to which they were pleading guilty—though the courts of course could not have known of any error at the time of the plea hearing. On the other hand, the district court here *correctly* advised Hardy— and Hardy does not contend otherwise—of the mandatory minimum and maximum sentences he faced with respect to the charges which he was pleading guilty to under his plea agreement. Pursuant to that agreement, count 9 was to be dismissed, and thus the district court did not address any penalties attached to it. Accordingly, the district court here did not violate Rule 11. *Cf. Hughes*, 726 F.3d at 661 ("Failure to inform a defendant correctly as to the sentencing range he faces as *a result of his guilty plea* can be grounds for vacatur of the plea (emphasis added)); *United States v. Adams*, 566 F.2d 962, 968 (5th Cir. 1978) ("Rule 11, as amended, requires that the trial judge inform the defendant of the minimum and maximum sentences he faces from *the charge to which he plead*.") (emphasis added).

Last, Hardy cites *United States v. Presley,* 478 F.2d 163, 168 (5th Cir. 1973). In that case, defendants pleaded nolo contendere to charges of violations of the Travel Act, 18 U.S.C. § 1952, but, after their pleas and before sentencing, the Supreme Court issued a decision in *Rewis v. United States*, 401 U.S. 808 (1971), that called into question whether the Travel Act extended to the defendants' conduct. *Id.* at 168. On the basis of *Rewis*, the defendants moved to withdraw their pleas prior to sentencing. *Id.* at 167-68. The district court refused, and the defendants appealed. We held that the

district court abused its discretion, explaining that, in light of *Rewis*, "it should have been clear that the admitted facts may not have been sufficient to warrant a federal charge of violation of" the Travel Act. *Id.* at 167. In other words, because the *Rewis* decision may have placed the defendants' conduct "beyond the limits of the criminal jurisdiction" of federal courts, the defendants' pre-*Rewis* purported waiver of their right to trial was not made knowingly, and they therefore "should have been permitted to withdraw their pleas." *Id.* at 168 (noting that due process requires a waiver of this constitutional right to be "intentional" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

*Presley* is distinguishable for two key reasons. First, the intervening legal development in that case—the Supreme Court's decision in *Rewis*—may have rendered the charges inapplicable to the defendants. *Id.* at 167. In other words, *Presley* considered a situation in which defendants were refused the opportunity to revoke their pleas for conduct that, due to legal changes, arguably "may not have constituted a federal offense." *Id.* By contrast, the intervening legal development here—the FSA—did not alter the illegality of the conduct underlying count 9; instead, it only affected the applicable sentence. Second, unlike the defendants in *Presley*, Hardy never pleaded guilty to the offense that was impacted by changes in the law. This case, then, does not present a situation "where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense." *United States v. Andrade*, 83 F.3d 729, 731-32 (5th Cir. 1996) (vacating conviction after guilty plea because, following a post-plea Supreme Court decision, the factual basis for defendant's plea was rendered "insufficient to support a conviction"); *see also United States v. Castro*, 73 F. App'x 79 (5th Cir. 2003) (affirming denial of motion to withdraw and explaining that, unlike in *Andrade*, intervening law had not rendered the defendant's conduct innocent).

No. 19-30159

In sum, Hardy has not shown that his plea was involuntary or unknowing. *See Brady v. United States*, 397 U.S. at 748, 757. Under the totality of the circumstances, the *Carr* factors do not weigh in favor of finding an abuse of discretion by the district in denying Hardy's motion to withdraw. *See Lord*, 950 F.3d at 1017; *McKnight*, 570 F.3d at 650.

\* \* \*

For these reasons, the judgment of the district court is AFFIRMED.